1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM ERRICO, ET AL.,<br><br>               Plaintiffs,<br><br>     v.<br><br>PACIFIC CAPITAL BANK, N.A., ET AL.,<br><br>               Defendants. | Case No.: 09-CV-04072-LHK<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT<br><br>(re: docket #23 and #24) |

William Errico, Loretta Ann Errico, and the William and Loretta Ann Errico Trust of 1972 (collectively "Plaintiffs") bring suit against Pacific Capital Bank, N.A. and Niraj Mirah (collectively "Defendants") alleging violations of the federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq*., and violations based on various state causes of action.  The thrust of Plaintiffs' allegations, as stated in their Second Amended Complaint ("SAC"), is that Defendants failed to timely notify Plaintiffs of an adverse decision regarding the financing of Plaintiffs' 140-unit condominium development in Turlock, California.  Prior to reassignment to this Court, the Honorable James Ware granted Defendants' motion to dismiss Plaintiffs' First Amended Complaint for failure to sufficiently allege that Plaintiffs submitted a "complete application" for credit as required by ECOA.  *See* February 17, 2010 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss with Leave to Amend ("February 17, 2010 Order") [dkt. #19]. Presently before the Court is Defendants' motion to dismiss the ECOA and contract-related claims,

1

1    and separate motion to dismiss the fraud and elder abuse claims in the SAC under Fed. R. Civ. P.

2    12(b)(6).[1]  The Court held a hearing on these motions on November 4, 2010.  For the reasons

3    discussed below, the Court DENIES IN PART AND GRANTS IN PART Defendants' motions to

4    dismiss.

## I.  BACKGROUND

6         Plaintiffs' filed the SAC on March 5, 2010, which alleges as follows.  Nearly 30

7    years ago, Plaintiffs obtained a 10.64 acre parcel of land in Turlock, California identified by

8    Assessor's Parcel No. 087-001-026 ("Turlock Property").  SAC ¶ 11.  In 2005, Plaintiff William

9    Errico, a real estate broker, became interested in developing the Turlock Property.  In December

10   2005, Plaintiffs obtained approval from the Turlock Planning Commission and City Council for a

11   planned unit development ("PUD") consisting of 140 condominium units, a commercial plaza, and

12   off-site improvements.  *Id*. at ¶ 12.  Beginning on or about December 1, 2005, Defendants agreed

13   to finance the construction, orally agreeing and promising to extend Plaintiffs credit up to and

14   above a guaranteed minimum of 75% of the appraised value of the completed project.  *Id*. at ¶¶ 14-

15   15.  Defendant Niraj Maharaj, Vice President of Pacifica Capital Bank, had previously done

16   business with Plaintiffs over a period of several years, including a previous loan for a facility in

17   Los Gatos, California. *Id*. at ¶ 13.

18        Plaintiffs' request was processed over the next two years.  On December 13, 2005,

19   Plaintiffs submitted their most recent tax returns and financial statement.  *Id*. at ¶ 17.  In March

20   2006, Plaintiffs submitted a pro forma budget with architectural plans and costs of development.

21   *Id*. at ¶ 18.  On October 6, 2006, the commercial plaza was appraised at $9.21 million, and on

22   November 6, 2006, the condominium development was appraised at $31.24 million.  As a result,

23   Defendants, who agreed to finance 75% of the appraised value, would be financing $6.095 million

24   for the commercial plaza and $23.43 million for the condominium development.  *Id*. at ¶ 20.

25

26        [1] Civil Local Rule 7-2(b), in regard to "Form" of motions, sets out the required contents of a
     motion, which should be "[i]n *one* filed document not exceeding 25 pages in length."  (emphasis
27   added).  Defendants filed motions to dismiss the first seven causes of action in the SAC, and
     another, simultaneous motion to dismiss the last four causes of action in the SAC.  Though
28   Defendants did not comply with the Civil Local Rules, Plaintiffs have opposed both motions and
     have not alleged any prejudice.  Accordingly, the Court will not strike either motion.

2

Case No.: 09-CV-04072-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    In December 2006, Defendants informed Plaintiffs that they required more detailed support

2    for the costs, yet continued to assure Plaintiffs that the previously agreed minimum financing for

3    the entire project would be provided.  *Id*. at ¶ 21.  In January 2007, Plaintiffs provided the updated

4    cost information.  On January 17, 2007, Defendants confirmed in writing that the loan was for

5    financing of the commercial plaza and the residential condominiums as a combined project.  *Id*. at

6    ¶ 22.

7    At an unspecified time, Defendant Maharaj advised Plaintiffs that, due to a decline in the

8    residential market, Plaintiffs should construct the project in phases, with the result that the

9    financing for the condominium construction would be deferred.  *Id*. at ¶ 23.  Plaintiffs and

10   Defendants subsequently agreed that the financing would be staggered in three separate loans for:

11   1) development of the commercial plaza; 2) off-site improvement for city streets; and then 3) the

12   development of the 140 condominiums.  *Id*.  Notwithstanding the staggered nature, Defendants

13   continued to assure Plaintiffs that they would still provide the "previously agreed minimum

14   guaranteed financing for the entire project."  *Id*.

15   On March 5, 2007, Plaintiffs provided Defendants with a detailed cost breakdown for the

16   first phase of condominium construction (36 units) plus off-site improvements, totaling

17   approximately $15.3 million.  *Id*. at ¶ 26.  On August 9, 2007, Plaintiffs provided updated cost

18   estimates for the commercial plaza development and off-site improvements, but not for the

19   condominiums "due to the phased construction and deferred financing strategy advised by

20   MAHARAJ."  *Id*. at ¶ 29.  On August 10, 2007, Plaintiffs provided updated title reports to

21   Defendants, showing, as requested by Defendants, the division of parcels for the condominiums

22   and the commercial plaza.  *Id*. at ¶ 30.  On information and belief, Plaintiffs allege that title reports

23   were the last piece of information Defendants required for their application to finance the entire

24   project, and thus Plaintiffs "submitted a completed application for all three loans as of August 10,

25   2007."  *Id*.

26   Approximately two weeks later, Defendants ordered an escrow only for two loans, one for

27   the commercial plaza at approximately $6.9 million (75% of the appraisal obtained in November

28   2006) and one for the off-site improvements at $1.7 million.  *Id*. at ¶ 31.  Prior to the execution of

3

United States District Court
For the Northern District of California

the loan documents for the first two loans, Defendants did not inform Plaintiffs, either in writing or orally, that the financing for the condominiums had been denied or that the application was incomplete, and continued to represent to Plaintiffs that the minimum amount of $23.43 million would be provided on a deferred basis. *Id.* at ¶ 32.

On August 27, 2007, Plaintiffs requested a clear statement from Defendants that Defendants would have no recourse against Plaintiff's personal assets in the event of default. *Id.* at ¶ 33. Defendant Maharaj promised to incorporate these changes in the loan documents. On or about September 12, 2007, Plaintiffs signed the loan documents relating to the commercial plaza and the off-site improvements. *Id.* at ¶ 34. Immediately prior to the signing of the loan documents on or about September 12, 2007, Defendant Maharaj stated that "the construction loan for the condominium phase would be ready 'in one week.'" *Id.* at ¶ 35. Plaintiff alleges that this representation was false, as Defendants had already determined not to finance the condominium construction, but wanted to conceal that decision so as not to lose the loans for the commercial plaza and off-site improvements. *Id.* On September 14, 2007, Defendants signed an agreement stating that, in the event of default on the commercial plaza and off-site improvement loans, the bank "waives its rights to pursue borrower's personal property. References to Personal Guarantee and other collateral, including deposit accounts are void." *See* SAC, Exh. 2, "September 14, 2007 Letter Agreement for the William Errico & Loretta Ann Errico 1972 Trust" [dkt. #20-2].

After execution of the two loan documents, Defendants advised Plaintiffs that the condominium construction costs should be further reduced and should be initially leased as apartments instead of condominiums. *Id.* at ¶ 39. On or about November 30, 2007, the parties executed a document lowering the interest rate on the commercial plaza loan by 0.25%. *Id.* at ¶ 40. In January 2008, at the request of Defendant Maharaj, Plaintiffs submitted a formal written proposal for financing the construction of condominiums, with language that the condominiums would be initially leased as apartments. *Id.* at ¶ 41. Plaintiffs allege that this written proposal was a "renewed request for credit in the form of a construction loan to finance the condominiums / apartments." *Id.* As part of the written proposal, Plaintiffs provided updated cost information and a 5 year rental pro forma. *Id.* For more than one month, Defendants took no action on the renewed

4

application.  *Id.* at ¶ 42.  In February 2008, Defendant Maharaj indicated that new appraisals were necessary, and new appraisals were obtained in May 2008.  *Id.*  The new valuation of the apartments was estimated at $29.76 million (instead of $31.24 million as back in November 2006), with the new loan subsequently set at $22.32 million, representing 75% of the newly appraised value.  *Id.*  In response to the new appraisal, Plaintiffs submitted revised cost estimates for the condominium construction; Defendants, however, "took several more months without any action on the renewed application."  *Id.*

On August 12, 2008, Defendant Maharaj informed Plaintiffs that the new loan would be in escrow by the first week of September, but then, on August 25, 2008, Defendants informed Plaintiffs that they would have to lower the proposed financing to $20.832 million.  *Id.* at ¶ 44. Plaintiffs agreed to the reduction.  *Id.*  On October 7, 2008, Defendants approved the use of $60,000 for onsite grading and utility permits for the condominium units, which Plaintiffs allege confirms the original agreement to finance the condominium construction.  *Id.* at ¶ 45.  Around this same time, "a national banking crisis occurred," with federal officials determining that Defendant Pacific Capital Bank was not in compliance with federal regulations in regard to loans and capital reserves.  *Id.*  In November 2008, Defendants informed Plaintiffs that an independent appraisal was necessary, which was not completed until March 2009.  *Id.* at ¶ 46.  This appraisal valued the condominium development at $16.99 million.  *Id.*

Since January 2008, the parties have met on several occasions to find a resolution, but have not been successful.  *Id.* at ¶ 48.  It was not until July 22, 2009 that Defendants first notified Plaintiffs that the rest of the financing would not be provided.  *Id.*

On the basis of these allegations, Plaintiffs allege eleven causes of action: 1) Failure to Notify of Adverse Credit Decision in Violation of the ECOA; 2) Failure to Notify of Incomplete Application in Violation of the ECOA; 3) Failure to Use Reasonable Diligence in Obtaining Information in Violation of the ECOA; 4) Age Discrimination in Violation of the ECOA; 5) Breach of Oral Contract; 6) Breach of Implied Contract; 7) Breach of Covenant of Good Faith and Fair Dealing; 8) Promissory Estoppel; 9) Fraud; 10) Negligent Misrepresentation; and 11) Elder Abuse.

## II. LEGAL STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under

Rule 12(b)(6) may be based on a either a lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare System,*

*LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In considering whether the complaint is sufficient to

state a claim, the court must accept as true all of the factual allegations contained in the complaint.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, the court need not accept as true

"allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare*

*v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). While a

complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

when it "allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If a court grants a motion to dismiss, leave to

amend should be granted unless the pleading could not possibly be cured by the allegation of other

facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III. DISCUSSION

Defendants move to dismiss all eleven causes of action, but argue that dismissal of the

ECOA causes of action will leave only state causes of action that are more appropriately addressed

in state court. The Court will first address the federal causes of action, e.g., the causes of action

under ECOA. Finding that Plaintiffs have stated a claim as to three of the four ECOA causes of

action, the Court will then proceed to analyze the seven state causes of action.

### A.  ECOA Claims

The ECOA prohibits discrimination against an applicant for credit based on race, color,

religion, national origin, sex or marital status, or age. *See* 15 U.S.C. § 1691(a). The ECOA creates

a private right of action for actual, compensatory and punitive damages, equitable relief, and

6

United States District Court
For the Northern District of California

1    recovery of costs, and provides a two-year statute of limitations from the date of the violation.  *Id*.

2    § 1691e(a)-(f).  In addition, the ECOA establishes procedural requirements that creditors must

3    follow in notifying *any* applicant when action is taken on the credit application.  *See* 15 U.S.C.

4    § 1691(d).  Under ECOA, within thirty days of receiving a completed application for credit, a

5    creditor shall notify the applicant of its action on the application.  15 U.S.C. § 1691(d)(1).  A

6    "creditor" means a person who, in the ordinary course of business, regularly participates in a credit

7    decision, including setting the terms of credit.  12 C.F.R. § 202.2(l).

8            If "adverse action" is taken regarding an application for credit, a creditor must provide an

9    applicant with a statement containing specific reasons for such action.  15 U.S.C. § 1691(d)(2).

10   Under the statute, "[t]he term 'adverse action' means a denial or revocation of credit, a change in

11   the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount

12   or on substantially the terms requested."  *Id*. at § 1691(6).  The regulations further explain that

13   adverse action means "[a] refusal to grant credit in substantially the amount or on substantially the

14   terms requested in an application unless the creditor makes a counteroffer (to grant credit in a

15   different amount or on other terms) and the applicant uses or expressly accepts the credit offered."

16   12 C.F.R. 202.2(c)(i).  In regard to incomplete applications, "[w]ithin 30 days after receiving an

17   application that is incomplete regarding matters that an applicant can complete, the creditor shall

18   notify the applicant either: (i) Of action taken, in accordance with paragraph (a) of this section; or

19   (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section."  *Id*. at § 202.9(c).

20           An application is an oral or written request for an extension of credit that is made in

21   accordance with procedures used by a creditor for the type and amount of credit requested.  *Id*. at

22   § 202(f).  A completed application is one in which a creditor has received all the information that

23   the creditor regularly obtains and considers in evaluating applications for the amount and type of

24   credit requested.  Id.  As Judge Ware noted in the February 17, 2010 Order, ECOA liability can

25   only rest upon a "completed application."  In reviewing an application for completeness, "the

26   creditor shall exercise reasonable diligence in obtaining such information" necessary to decide

27   whether to extend credit.  *Id*. at § 202.2(f).

28           Plaintiffs' SAC separated the ECOA claims into four distinct causes of action:

**United States District Court**
For the Northern District of California

7

1   1) failure to notify of adverse action; 2) failure to notify of incomplete application; 3) failure to use

2   reasonable diligence; and 4) age discrimination.  The Court finds that Plaintiff has stated a claim

3   for the first three causes of action, but not for the fourth cause of action (age discrimination).

### 1.   Failure to Notify of Adverse Action

5   Plaintiffs alleged that they submitted a completed application for all three loans as of

6   August 10, 2007.  *See* SAC ¶ 30.  As to the loan for the condominium construction, this application

7   included Plaintiffs' tax returns and financial statement, a budget for construction, an appraisal of

8   the value of the construction, a detailed cost-breakdown for the first phase of condominium

9   construction, and a title report showing the division of the land parcel between condominium

10  development and commercial plaza.  Under the notice provisions of ECOA, Defendants would

11  have had thirty days (up to September 9, 2010) to notify Plaintiffs of an adverse action.  As alleged

12  by Plaintiffs, however, Defendants did not notify Plaintiffs of the refusal to finance the

13  condominium loan until July 2009.  The Court finds Plaintiffs' allegations sufficient to state a

14  claim for failure to notify of an adverse action under ECOA.

15  As a preliminary matter, a procedural violation of the notice provisions of ECOA may

16  provide the basis for a cause of action even without regard to allegations of discrimination.  *See*

17  *Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996).  Defendants do not contest this proposition,

18  but instead argue that: 1) any possible ECOA violation is barred by the two-year statute of

19  limitations; and 2) Plaintiffs did not submit a "complete application" for the condominium loan as

20  of August 10, 2007.  *See* Defs.' Motion to Dismiss 4-6 [dkt. #24].  Neither of Defendants'

21  arguments is persuasive.

22  As to the statute of limitations, Defendants argue that an adverse action must have taken

23  place in January 2007 on the basis that the decision to structure the loan in three phases (deferral)

24  was a "refusal" under ECOA of the original loan request.  If so, Plaintiffs would have had until

25  January 2009 to file a complaint, but did not file their original complaint until September 2, 2009.

26  Plaintiffs, however, adequately refute Defendants' argument by pointing to allegations in the SAC

27  establishing that the phased loan, or deferral, was a "counteroffer" which Plaintiffs accepted.  *See*

28  SAC ¶ 23-24 ("[T]he parties subsequently agreed that the financing should be staggered in three

8

separate loans."). Thus, based on Plaintiffs' allegations, the deferral was not adverse action under ECOA. *See* 12 C.F.R. 202.2(c)(i) (there is no adverse action when "the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered."

Second, Defendants argue that Plaintiffs could not have submitted a "completed application" for the condominium development loan because Plaintiffs' own allegations show that, on August 9, 2007, updated cost figures were only provided for the commercial plaza and off-site improvements, not for condominium construction. *See* SAC ¶¶ 29-30. And, Defendants continue, if updated cost figures were required to establish a completed application for the commercial plaza and off-site improvement loans, then updated cost figures must necessarily have been required to establish a completed application for the condominium loan. *See* Mot. to Dismiss 5-6.

Defendants' argument is not without merit, but is ultimately unavailing at this stage of the litigation. As Plaintiffs submit, there is no requirement in ECOA that supporting materials be the same for each credit application. Rather, pursuant to the relevant ECOA regulations, a complete application is one in which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested. *See* 12 C.F.R. § 202.2(f). Thus, whether Plaintiffs' application for the loan as to the condominium was, in fact, complete will depend on the type of information Defendants regularly obtain and consider in evaluating credit applications. At this, the pleading stage, the Court does not find it implausible that Plaintiffs' application for all three loans, including the condominium loan, could be considered complete for ECOA purposes as of August 10, 2007. *See Dufay*, 94 F.3d at 564-65 (vacating district court's issuance of summary judgment because material facts remained as to when plaintiffs' application was completed).

Thus, Plaintiffs have stated a claim for failure to notify of an adverse action within the thirty-day period specified by ECOA. Defendants' motion to dismiss this cause of action is denied.

## 2. Failure to Notify of Incomplete Application

In the alternative, Plaintiffs argue that, if their loan application as to the condominium

United States District Court
For the Northern District of California

development was not complete by August 10, 2007, Defendants violated ECOA by not informing Plaintiffs of their incomplete application.  *See* 12 C.F.R. § 202.9(c) ("[w]ithin 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either: (i) Of action taken, in accordance with paragraph (a) of this section; or (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section."  Instead, according to Plaintiffs' allegations, Defendant Maharaj told Plaintiffs on September 12, 2007 that the loan documents would be ready "in one week."  *See* SAC ¶¶ 35, 65.

Defendants argue that the real reason for deferring the condominium loan was the overall decline in the real estate market and the increasing likelihood that construction costs would exceed 75 percent of the appraised value.  *See* Defs.' Mot. to Dismiss 7.  In other words, according to Defendants, the loan deferral was not based on "matters that an applicant can complete" and thus did not require a response on Defendants' part.

Although Defendants' argument may prove correct, the Court cannot dismiss Plaintiffs' allegations on the basis of Defendants' alternative interpretation of the facts.  *See Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 664 (9th Cir. 2008) ("All allegations of material fact shall be taken as true and construed in the light most favorable to the nonmoving party.").  Here, the Court must construe the allegations in the light most favorable to Plaintiffs, and in doing so, the Court finds that Plaintiffs have sufficiently alleged failure to notify of an incomplete application.  According to Plaintiffs' allegations, after August 10, 2007, Defendants falsely informed Plaintiffs that the condominium loan would be ready "in one week" and "intentionally failed to notify plaintiffs of the incompleteness of the condominium loan application so as not to jeopardize the other two loans for the commercial plaza and off-site improvements."  *See* SAC ¶ 65.  Plaintiffs further allege that they would not have incurred the substantial expenses in relation to the commercial plaza and off-site improvements if they had been informed of the incomplete application or uncertain status of the condominium financing.  *Id*. at ¶ 66.  Under the notice provisions of ECOA, Plaintiffs' allegations sufficiently state a claim for failure to notify of an incomplete application.

Accordingly, Defendants' motion to dismiss this cause of action is denied.

**United States District Court**
For the Northern District of California

10

### 3.   Failure to Use Reasonable Diligence

As with the analysis of the prior two ECOA claims, the Court finds that Plaintiffs have sufficiently stated a claim for Defendants' failure to use reasonable diligence in determining whether Plaintiffs had submitted a completed application. *See* 12 C.F.R. § 202.2(f) (in reviewing an application for completeness, "the creditor shall exercise reasonable diligence in obtaining such information" necessary to decide whether to extend credit). Plaintiffs' SAC goes into specific detail about the alleged delay on the part of Defendants, which included requiring additional appraisals and requiring additional cost breakdowns for nearly two years after the alleged completed application on August 10, 2007, until finally informing Plaintiffs that their loan application had been denied in July 2009. *See* SAC ¶¶ 70-73. Defendants' contentions that it acted with reasonable diligence do not provide a basis for dismissal of Plaintiffs' claim at this stage. *See Dufay*, 94 F.3d at 565 (finding summary judgment inappropriate because of genuine factual dispute as to whether defendant bank acted with "reasonable diligence").

Thus, Defendants' motion to dismiss this cause of action is denied.

### 4.   Age Discrimination

The prior three claims focus on the notice provisions of ECOA. In their fourth claim, Plaintiffs assert actual age discrimination in violation of ECOA. *See* 15 U.S.C. § 1691(a)(1) (prohibiting a creditor from discriminating against any applicant based on age, among other factors). Under ECOA, however, it is not prohibited discrimination "to make an inquiry of the applicant's age or of whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness [creditworthiness] as provided in regulations of the Board." *Id.* at § 1691(b)(2). Plaintiffs submit that Defendants' unreasonable delay in acting on Plaintiffs' application, in itself, constitutes age discrimination because "any delay inherently impacts the elderly disproportionately and in a discriminatory manner." *See* SAC ¶ 75. And, Plaintiffs continue, Defendants violated ECOA by considering Plaintiff William Errico's age in connection with whether Plaintiffs' could complete the condominium project. *Id.*

11

United States District Court
For the Northern District of California

1    Plaintiffs' allegations of age discrimination, as currently pled, fail to state a claim under

2  ECOA.  To state a discrimination claim under ECOA, Plaintiffs must show that: 1) they were

3  members of a protected class; 2) they applied for and were qualified for the loan at issue; 3) the

4  loan was rejected despite Plaintiffs' qualifications; and 4) the creditor continued to approve loans

5  for similarly situated applicants or treated members not in the protected class more favorably.  *See*

6  *Shiplet v. Veneman*, 620 F. Supp. 2d 1203, 1232 (D. Mont. 2009).  Even construing the pleadings

7  in their favor, Plaintiffs have not alleged sufficient facts to establish an age discrimination claim.

8  Specifically, Plaintiffs have not alleged that other, similarly situated applicants were treated more

9  favorably.  Moreover, on Plaintiffs' own allegations, Defendants agreed to waive any recourse to

10  Plaintiffs' personal assets in the event of default and agreed that the death of the Plaintiffs would

11  not constitute default.  *See* SAC ¶¶ 37-38.  These allegations of accommodations on the part of

12  Defendants because of Mr. Errico's age do not support an inference of age discrimination.

13    Accordingly, Plaintiffs' age discrimination claim under ECOA is dismissed with leave to

14  amend.

15              **B.  State Law Causes of Action**

16    As Plaintiffs have stated a claim under ECOA, the Court will now address Plaintiffs' state

17  law causes of action.

18                  **1.  Breach of Oral Contract**

19    Under California law, a binding oral contract may arise "when all of the terms are definitely

20  understood" and agreed to by both parties.  *Khajavi v. Feather River Anesthesia Medical Group*, 84

21  Cal. App. 4th 32, 61 (Cal. App. 3d Dist. 2000).  However, in the context of negotiations, "where

22  the parties understood that the proposed agreement is not complete until reduced to formal writing

23  and signed, no binding contract results until this is done."  *Louis Lesser Enterprises, Ltd. v. Roeder*,

24  209 Cal. App. 2d 401, 405 (1962).  Under California Civil Code § 1624 (Statute of Frauds), a

25  "contract, promise, undertaking, or commitment to loan money or to grant or extend credit, in an

26  amount greater than one hundred thousand dollars ($100,000)" must be in writing and "subscribed

27  by the party to be charged" or else the contract is invalid.  Cal. Civ. Code § 1624(a)(7).  A party

28  may be estopped, however, from relying on the statute of frauds "where unconscionable injury

12

1     would result from denying enforcement of the oral contract after one party has been induced by the

2     other seriously to change his position in reliance on the contract."  *See Kipperman v. Dixson (In re*

3     *Diego's Inc.)*, 88 F.3d 775, 778 (9th Cir. Cal. 1996).

4          Plaintiffs allege that, beginning on or around December 1, 2005 and continuing for a period

5     of about two years, Defendants "orally agreed and promised on several occasions to finance the

6     construction of the entire PUD for plaintiffs."  SAC ¶ 80.  According to Plaintiffs, Defendant

7     Maharaj, on December 1, 2005, told Plaintiffs that he was "ready to process the Construction

8     Commitment when [Plaintiffs] were ready."  *Id.* at ¶ 82.  The oral contract, which was allegedly

9     evidenced by the parties' course of dealing, involved a loan for 75% of the appraised value of the

10    entire development project, would be capped at a maximum of three years, and would have an

11    interest rate established by the marketplace, the prime rate, and Defendants' lending practices.  *Id.*

12    The interest rate ultimately agreed upon was 0.25% below the *Wall Street Journal* prime rate.  *Id.*

13    Finally, Plaintiffs allege that the oral contract is excluded from the Statute of Frauds by reason of

14    estoppel, as Plaintiffs detrimentally relied on the oral agreement in not selling the Turlock Property

15    even though an entity called "Standard Homes" offered Plaintiffs $4.4 million.  *Id.* at ¶ 84.

16         The Court finds that Plaintiffs' claim for breach of oral contract, as currently pled, is

17    insufficient to establish an enforceable oral contract.  Although certain terms were allegedly agreed

18    upon (e.g., loan for 75% of appraised value), Plaintiffs' allegations of the parties' conduct suggest

19    that the terms were subject to continuing negotiation and also suggest that, as with the other two

20    loans, the parties contemplated reducing the terms to a formal writing.  *See Khajavi*, 84 Cal. App.

21    at 60-61 (an oral contract is only binding if the parties reach an agreement as to all material terms

22    and, if a formal writing is anticipated, is not complete until reduced to written form).  For example,

23    the parties did not settle on a repayment plan, did not decide the exact amount (as opposed to the

24    percentage) of the loan, did not settle on a time period, and did not settle on how the loan would be

25    disbursed.  In addition, the parties' course of dealing with respect to the other loans supports an

26    inference the parties' anticipated reducing the negotiations to writing.  Especially with so much

27    money at stake (potentially more than $20 million), the Court will not find an oral contract on the

28    basis of Plaintiffs' expectation of an agreement.

Case No.: 09-CV-04072-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   Moreover, Plaintiffs' allegations, as currently pled, are insufficient to establish an estoppel

2   exception to the Statute of Frauds.  First, as noted above, Plaintiffs have not alleged sufficient facts

3   establishing an oral contract upon which they could rely.  And second, as to Plaintiffs' allegations

4   that an entity called "Standard Homes" offered them $4.4 million for the Turlock Property and that

5   Plaintiffs would have sold it but for the oral contract (SAC ¶ 84), Plaintiffs do not provide a date or

6   any other details regarding this alleged "offer."  Thus, it is not clear that Defendants' actions

7   caused Plaintiffs to forsake another sales opportunity.  *See Kipperman*, 88 F.3d at 779 (allowing

8   estoppel to Statute of Frauds when plaintiff gave up other offers for sale of restaurant in reliance on

9   oral contract).

10   Accordingly, the Court will grant Defendants' motion to dismiss the breach of oral contract

11   cause of action with leave to amend.

12   ### 2.  Breach of Implied Contract

13   Under California Civil Code § 1621, "[a]n implied contract is one, the existence and terms

14   of which are manifested by conduct.  **"**An implied contract . . . in no less degree than an express

15   contract, must be founded upon an ascertained agreement of the parties to perform it, the

16   substantial difference between the two being the mere mode of proof by which they are to be

17   respectively established . . . Although an implied in fact contract may be inferred from the

18   'conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an

19   intent to promise.'"  *See Friedman v. Friedman*, 20 Cal. App. 4th 876, 887 (Cal. App. 1st Dist.

20   1993).

21   Plaintiffs allege that "to the extent there is no oral contract as alleged above, there was an

22   implied in fact contract between the parties based on their course of dealing" between December

23   2005 and September 2007.  SAC ¶ 89.  This course of dealing, according to Plaintiffs, includes the

24   prior two loans and the appraisals, cost estimates, and title reports provided to Defendants.

25   Plaintiffs argue that the three loans were "so closely linked" that the agreements on the first two

26   loans "necessarily imply a duty to provide the third."  Pls.' Opp'n to Defs.' Mot. to Dismiss ECOA

27   and Contract Claims at 22.  Plaintiffs submit that the Statute of Frauds does not apply "by reason of

28   promissory estoppel" and partial performance.  SAC ¶ 94.

1    Defendants argue that, under California Civil Code § 1625, a written contract supersedes all

2  prior negotiations and stipulations.  There is no dispute that the parties entered into written

3  contracts for the commercial plaza and off-site improvements on November 30, 2007.  Thus,

4  according to Defendants, the parties' two written contracts supersede any prior negotiations

5  regarding the loan for the condominium development, and there remains no implied in fact contract

6  as to the entire project as of November 30, 2007.

7    Defendants have the better of the argument.  Plaintiffs' allegations that there was one

8  overall promise to finance the entire project, including the condominium development, run into the

9  obstacle that Plaintiffs agreed *in writing*, on November 30, 2007, to separately finance only the

10  loans for the commercial plaza and the off-site development.  An implied in fact contract may only

11  be "founded upon an ascertained agreement of the parties to perform it."  *Zenith Ins. Co. v.*

12  *O'Connor*, 148 Cal. App. 4th 998, 1010 (Cal. App. 2d Dist. 2007).  Here, on Plaintiffs' own

13  allegations, Defendants continued to request additional information for the condominium loan,

14  negotiated additional terms, and only signed written contracts for the other two loans.  These

15  allegations certainly suggest an expectation to complete an agreement, but not an actual agreement.

16  *See Apablasa v. Merritt & Co.*, 176 Cal. App. 2d 719 (Cal. App. 2d Dist. 1959) ("[the] preliminary

17  negotiation leading up to the execution of a contract must be distinguished from the contract itself.

18  There is no meeting of the minds of the parties while they are merely negotiating as to the terms of

19  the agreement to be entered into.").

20    Accordingly, Defendants' motion to dismiss the breach of implied contract cause of action

21  is granted with leave to amend.

### 3.   Breach of Covenant of Good Faith and Fair Dealing

23    "The covenant of good faith is read into contracts in order to protect the express covenants

24  or promises of the contract, not to protect some general public policy interest not directly tied to the

25  contract's purposes.  Thus, the implied covenant does no more than protect the right to enjoy the

26  benefits of the contract."  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1390-

27  1391 (Cal. App. 1st Dist. 1999).  "In essence, the covenant is implied as a *supplement* to the

28  express contractual covenants, to prevent a contracting party from engaging in conduct which

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1 (while not technically transgressing the express covenants) frustrates the other party's rights to the

2 benefits of the contract."  *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990).

3 Plaintiffs' seventh cause of action is for breach of covenant of good faith and fair dealing

4 "by intentionally and negligently acting to deprive plaintiffs of the benefits of the contracts and

5 agreements as alleged above and by preventing plaintiffs' performance."  SAC ¶ 99.

6 The difficulty with Plaintiffs' argument is that "[t]he implied covenant of good faith and

7 fair dealing rests upon the existence of some specific contractual obligation."  *See Racine &*

8 *Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1031 (Cal. App. 4th Dist. 1992).

9 Here, Plaintiffs essentially ask the Court to create a third loan agreement rather than "supplement"

10 the two existing loan agreements.  Although it is apparent that both parties can be said to have

11 anticipated a loan for the condominium construction, the existing contracts between the parties

12 (e.g., the two written contracts for the commercial plaza and off-site improvements) do not

13 expressly require a third loan for the development of the condominiums, and the Court has already

14 determined that Plaintiffs do not state a claim for breach of oral or implied contract.  Therefore,

15 without an underlying contract to rely on, it cannot be said that Defendants' deprived Plaintiffs of

16 any contractual benefit.  *See Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 116

17 (Cal. App. 4th Dist. 1991) (cause of action for breach of covenant of good faith and fair dealing

18 requires "an underlying contract" upon which to imply the covenant).

19 The Court grants Defendants' motion to dismiss the breach of covenant of good faith and

20 fair dealing with leave to amend.

21 ### 4.  Promissory Estoppel

22 "In California, under the doctrine of promissory estoppel, 'A promise which the promisor

23 should reasonably expect to induce action or forbearance on the part of the promisee or a third

24 person and which does induce such action or forbearance is binding if injustice can be avoided only

25 by enforcement of the promise. The remedy granted for breach may be limited as justice requires.'"

26 *See Kajima/Ray Wilson v. Los Angeles County Metrop. Transp. Auth.*, 1 P.3d 63, 66 (Cal. 2000).

27 The four elements of promissory estoppel are: 1) a clear promise; 2) reasonable reliance; 3)

28 substantial detriment; and 4) damages "measured by the extent of the obligation assumed and not

16

1   performed." *See Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th

2   1460, 1470 (Cal. App. 4th Dist. 2007).

3        Defendants cite to a 1976 California appellate court decision as providing guidance in a

4   similar situation. *See Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885 (Cal. App. 2d

5   Dist. 1976). *Laks* involved a plaintiff who received a conditional commitment letter from

6   defendant bank for the financing of the construction of a hotel. *Id.* at 891. The California court

7   held that the letter, which expressly stated that it is a "conditional commitment" and was

8   completely silent as to the actual terms of the loan from the lead lender, was not a clear promise

9   upon which plaintiff could reasonably rely for a promissory estoppel cause of action. *Id.* at 893.

10       Plaintiffs allege that "to the extent that there is no enforceable contract as alleged above,

11   [Pacific Capital Bank] is liable under a theory of promissory estoppel." SAC ¶ 104. The Court

12   agrees with Plaintiffs that *Laks* is distinguishable based on the allegations here that Defendants

13   promised financing of the entire project without condition and that Plaintiffs reasonably relied on

14   this promise based on the parties' history together. Specifically, Plaintiffs allege: 1) that there was

15   a clear promise to finance the entire project in the minimum amount of 75% of the appraised value;

16   2) Plaintiffs reasonably relied on this promise based on Defendants' role as "financial adviser" to

17   Plaintiffs over a period of approximately two years; 3) Plaintiffs experienced substantial detriment

18   by investing substantial time and money in design and construction costs, and took on substantial

19   credit obligations in the two loans for the commercial plaza and off-site improvements on the

20   assurance that Defendant Pacific Capital Bank would finance the entire project; and 4) that

21   Plaintiffs have suffered actual damages in design and construction costs, loan fees, and lost profits

22   from both the commercial plaza and condominiums. SAC ¶¶ 105-108. The Court finds these

23   allegations sufficient to state a claim for promissory estoppel.

24       Thus, Defendants' motion to dismiss the promissory estoppel cause of action is denied.

25                                 **5. Fraud**

26       "Under California law, the 'indispensable elements of a fraud claim include a false

27   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess*

28   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Federal Rule of Civil Procedure

17

9(b), which applies to both state and federal causes of action, requires that the circumstances surrounding the fraud be pled with specificity.  *Id.* at 1103-04.  Defendants argue that Plaintiffs have failed to meet the heightened pleading standard for fraud and that, as to the $6.9 million loan for the commercial plaza, Plaintiffs have waived any right to sue for fraud based on their agreement on November 30, 2007 to reduce the interest rate on their $6.9 million loan (signed on September 12, 2007) by 0.25 percent.

The Court finds that Plaintiffs have sufficiently stated a claim for fraud (providing the "who, what, where, when, and how" of the fraudulent conduct).  Plaintiffs have identified a specific individual (Defendant Niraj Maharaj), specific misrepresentations (that Defendants would finance the entire project for 75% of the appraised value and that the condominium financing would be available a week after the execution of the loans on the commercial plaza and the off-site improvements), an exact date on which the alleged misrepresentations were made (September 12, 2007), an intent to defraud (that Defendants had no intention of delivering on the third loan, but wanted to obtain fees, commissions, and the right to seize property under the first two loans), justifiable reliance (Plaintiffs obtained financing and incurred substantial design and construction costs based on Defendant Maharaj's misrepresentations), and damages (costs and lost profits).  *See* SAC ¶¶ 110-113; *see also City Solutions v. Clear Channel Communs.,* Inc., 365 F.3d 835,  (9th Cir. 2004) (finding fraud claim valid where plaintiffs identified specific misrepresentation, established justifiable reliance, and made plausible claim that defendants' conduct caused damages).

The Court also rules that whether Plaintiffs waived their rights to sue for fraud by agreeing to an interest rate reduction on November 30, 2007 is subject to dispute, and thus not appropriate for dismissal at the pleading stage.  *See Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1192 (Cal. App. 3d Dist. 2006) (although waiver "may be determined as a matter of law where the underlying facts are undisputed," acknowledging that "the existence of waiver is ordinarily a question of fact.").  It is not "undisputed" that Plaintiffs learned of the fraud on November 30, 2007, and knowingly agreed to a new agreement that provided substantial benefits to Plaintiffs.  On Plaintiffs' allegations, they still believed the condominium loan would be forthcoming even as of November 30, 2007.

Case No.: 09-CV-04072-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    Accordingly, Defendants' motion to dismiss the fraud cause of action is denied.

2                        **6.   Negligent Misrepresentation**

3         As Defendants acknowledge, negligent misrepresentation "sounds in fraud" and is subject

4    to Rule 9(b)'s heightened pleading standard, except that negligent misrepresentation does not have

5    the same element of "intent to deceive or defraud." *See Oakland Raiders*, 144 Cal. App. 4th at

6    1184 ("the term 'fraud' may be used to describe not just an intentional misrepresentation but as

7    well certain misrepresentations that are merely negligent, as the separate and distinct tort of

8    negligent misrepresentation is 'a species of the tort of deceit.' "). Thus, as Plaintiffs allege

9    sufficient facts to establish fraud (i.e., intentional misrepresentation), they also allege sufficient

10   facts to establish negligent misrepresentation. *See Intrieri v. Superior Court,* 117 Cal. App. 4th 72,

11   85, 12 Cal. Rptr. 3d 97 (2004) (The elements of a cause of action for fraud and a cause of action for

12   negligent misrepresentation are very similar . . . [B]oth torts are defined as deceit. However, the

13   state of mind requirements are different."). Thus, even if Defendants did not *intend* to defraud,

14   Plaintiffs have sufficiently alleged that Defendants made false statements without reasonable

15   grounds for such belief. *Id*. at 86 ("Negligent misrepresentation lacks the element of intent to

16   deceive. Therefore, where the defendant makes false statements, honestly believing that they are

17   true, but without reasonable ground for such belief, he may be liable for negligent

18   misrepresentation, a form of deceit.").

19        Accordingly, Defendants' motion to dismiss this cause of action is denied.

20                            **7.   Elder Abuse**

21        Plaintiffs' eleventh and final cause of action is for elder abuse under California Welfare and

22   Institutions Code § 15610.30. SAC ¶ 122. Section 15610.30(a) provides:

23            **(a)** "Financial abuse" of an elder or dependent adult occurs when a person or entity

24            does any of the following:

25             **(1)** Takes, secretes, appropriates, obtains, or retains real or personal property of an

26            elder or dependent adult for a wrongful use or with intent to defraud, or both.

27             **(2)** Assists in taking, secreting, appropriating, obtaining, or retaining real or

28            personal property of an elder or dependent adult for a wrongful use or with intent to

                                        19

**United States District Court**
For the Northern District of California

1   defraud, or both.

2    **(3)** Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting,

3   appropriating, obtaining, or retaining, real or personal property of an elder or

4   dependent adult by undue influence, as defined in Section 1575 of the Civil Code.

5   Cal. Welf. & Inst. Code § 15610.30(a).  Plaintiffs, who were 78 and 77 at the time of the filing of

6   the SAC on March 5, 2010, allege that Defendants, who had previously acted as "financial

7   advisers" to Plaintiffs, "fraudulently and negligently induced a [sic] plaintiffs to obtain two loans

8   from [Pacific Capital Bank] and, as a result, wrongfully induced plaintiffs: a) to mortgage their

9   Turlock property to defendant [Pacific Capital Bank] and b) to incur interest charges, fees and

10  other expenses associated with the loans and development of the Turlock Property."  SAC ¶ 124.

11       The elder abuse claim, as Defendants acknowledge, is essentially another fraud-based

12  claim, and, taking all allegations in the SAC as true, does state a claim for the reasons provided

13  above in analyzing Plaintiffs' fraud and negligent misrepresentation causes of action.  *See Intrieri*,

14  117 Cal. App. 4th at 82-86 (finding summary adjudication inappropriate as to plaintiff's elder

15  abuse, fraud, and negligent misrepresentation causes of action where triable issues of fact existed

16  as to each cause of action).

17       Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' elder abuse cause

18  of action.

19                           **IV. CONCLUSION**

20       Accordingly, the Court DENIES IN PART AND GRANTS IN PART Defendants' motions

21  to dismiss Plaintiff's second amended complaint according to the following:

22       The Court DENIES Defendants' motions to dismiss with respect to the first cause of action

23  (Failure to Notify of Adverse Credit Decision in Violation of the ECOA), second cause of action

24  (Failure to Notify of Incomplete Application in Violation of the ECOA), third cause of action

25  (Failure to Use Reasonable Diligence in Obtaining Information in Violation of the ECOA), eighth

26  cause of action (Promissory Estoppel), ninth cause of action (Fraud), tenth cause of action

27  (Negligent Misrepresentation) and eleventh cause of action (Elder Abuse).

28

**United States District Court**
For the Northern District of California

Case No.: 09-CV-04072-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court GRANTS with leave to amend Defendants' motions to dismiss with respect to the fourth cause of action (Age Discrimination under ECOA), fifth cause of action (Breach of Oral Contract), sixth cause of action (Breach of Implied Contract) and seventh cause of action (Breach of Covenant of Good Faith and Fair Dealing).

Any amended complaint must be filed within thirty (30) days of this Order.  Failure to timely file an amended complaint will result in dismissal of the relevant causes of action with prejudice.

**IT IS SO ORDERED.**


Dated: November 9, 2010                                    _Lucy H. Koh_____

LUCY H. KOH
United States District Judge

Case No.: 09-CV-04072-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS